## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

SOUTHERN UTE INDIAN TRIBE,

     Plaintiff,

v.                                  Civil No. 05-988 WJ/LAM

MICHAEL O. LEAVITT, Secretary of the
United States Department of Health and Human
Services, et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER
## FOLLOWING PRESENTMENT HEARING

THIS MATTER comes before the Court following hearing and oral argument on the

following two motions: Plaintiff's Motion to Set Presentment Hearing for Writ of Mandamus,

filed July 2, 2007 (**Doc. 51**), and Defendants' Motion for Clarification, filed July 25, 2007 (**Doc.**

**58**).  Parties have applied to the Court for resolution of certain issues which have impeded their

ability to comply with the Court's previous Order granting injunctive relief to Plaintiff.

### BACKGROUND

Plaintiff, Southern Ute Indian Tribe, is a federally recognized Indian tribe organized

pursuant to Section 16 of the Indian Reorganization Act of 1934 (codified at 25 U.S.C. § 476).

In a Memorandum, Opinion and Order entered on June 15, 2007 (Doc. 50), the Court decided the

purely legal issue whether the Defendants had discretion under the Indian Self-Determination

and Education Assistance Act, 25 U.S.C. §§ 450 through 458bbb-2 ("ISDA"), to decline to enter

into a contract with the Plaintiff Tribe ("Tribe") to assume control over and management of the

programs, functions services and activities of the Southern Ute Health Center.  I granted

Plaintiff's Motion for Preliminary Injunction, and denied Defendants' Motion for Summary

Judgment:[1]

> Plaintiff is entitled to summary judgment on this issue and its first and second causes of action in its Complaint and is entitled to injunctive relief in accordance with 25 U.S.C. § 440m-1(a).  Plaintiff is directed to prepare a form of order for injunctive relief, submit it to Defendants for approval as to form, and then submit it to the Court through the email address indicated on my web page for proposed orders. . . . If parties are unable to reach agreement as to the form of an order, Plaintiff shall file a motion for a presentment hearing.

Doc. 50 at 19.

Plaintiff requested a presentment hearing because the parties have been able to only

partially agree on a form of order for injunctive relief.  Specifically, parties have agreed to enter

into a self-determination contract in the form of the model contract codified in 25 U.S.C. §

450l(c) without modification. However, the parties are unable to agree as to the starting date of

the contract, the amount of contract support costs required to be paid under the contract, or the

terminology concerning payment of contract support costs ("CSC").  Defendants request

clarification as to the amount and terms of payment, which they contend are inseparable from the

issue of whether Defendants were required to enter into a contract.

## DISCUSSION

## I.    Beginning Date of Contract

Plaintiff argues that the "beginning date" or "start date" of the proposed contract should

be the date that was originally proposed as a start date: October 1, 2005.   Defendants urge the

Court to find that the start date for the new proposed contract should be the date on which

Plaintiff begins operating the Clinic. They contend that an earlier start date would result in a

windfall to the Tribe because the Indian Health Service ("IHS"), and not the Tribe, was

---

[1]  The preliminary injunction was consolidated with the merits of the case.  See, Docs. 37, 38 and 39.

expending program funds to operate the Clinic from that time.   Plaintiff stated that if the original start date is not used, it gets punished for filing an appeal.  Plaintiff concedes, however, that it is not entitled to operational expenses and support costs it has not incurred, but claims there are other damages to which it may be entitled.[2]

Section § 450m-1(a) of the ISDA provides for injunctive relief "to compel the Secretary to award and fund an approved self-determination contract."  However, the statute offers no guidance on appropriate beginning dates for declined contracts which are reversed on appeal. The cases cited by Plaintiff suggest a beginning date which mirrors the original proposed start date for the contract, but I find these cases not to be persuasive because they are categorically different from this case.

For example, in Pascua Yaqui Tribe of Arizona, Docket No. A-99-20 (HHS Appeals Bd. Jan. 12, 1999), the agency declined certain parts of a proposed self-determination contract in October 1997.  At the same time, the agency approved the tribe's request for CSC, and placed the request in a "queue" or waiting list with other fiscal year 1998 program "starts" with a request date of July 21, 1997.

The issue in Pascua was whether section 328 of an appropriations bill passed by Congress in 1998 ("Section 328") prohibiting the use of fiscal year 1999 appropriations to enter into "new or expanded" self-determination contracts had an effect on the proposed self-determination contract which was declined by the agency in 1997.  On the administrative level, the tribe's request for a hearing on the partial declination was dismissed on the ground that it was rendered moot by Section 328.  The Appeals Board decided that Section 328 did not bar the use

---

[2]  Such damages, as described by Plaintiff, are: pre-award and start-up costs for buying equipment and moving furniture; interest from lump sum payments; and third party reimbursements.

of fiscal year 1999 appropriations to fund the contract.  It concluded that "any contract approved on appeal should not be viewed as a new fiscal year 1999 contract within the meaning of the appropriations bill but rather as a prior year contract that was unlawfully declined on October 20, 1997."  The Appeals Board also noted that the tribe would still be entitled to "the same contract as if IHS had properly approved its contract in the first instance."  As a result, the proposed contract was placed on the waiting list as of July 21, 1997, the date on which the agency had already obligated itself from that time to provide CSC for the approved portions of the proposed contract.

In another case cited by Plaintiff, Crownpoint Institute of Technology v. Norton, Civil No. 04-531 JP/DJS (D.N.M. Sept. 19, 2005) ("Crownpoint"), U.S. District Judge James A. Parker entered an order requiring the Bureau of Indian Affairs ("BIA") to enter into a series of contracts which the Court found had been wrongfully declined.[3]  Crownpoint provided post-secondary education programs, including vocational-technical programs.  Judge Parker ordered that the declinations be reversed, and that the contracts be deemed approved a certain number of days after the contracts' submissions to the contracting officer.

Both Crownpoint and Pascua are similar in that they involved contracts or programs which had already been partially approved, or had been operating under other funds.  The educational program in Crownpoint was running under grant funds, thereby forcing the tribe to incur the costs and expenses of running the program.  A "deemed" approval date assured that the agency would be reimbursing the CSC and continuing to fund the program.  Similarly, in Pascua, IHS had already obligated itself to provided CSC for the proposed contract.

---

[3]  The Court's Findings of Fact and Conclusions of Law, and the Declaratory Judgment and Writ of Mandamus in the Crownpoint case are attached as exhibits to Defendants' response, Doc. 57.

In yet another case cited by Plaintiff, <u>Cheyenne River Sioux Tribe v. Kempthorne</u>, Civ. 06-3015 (D.S.D. July 10, 2007), the United States District Court for South Dakota deemed "approved by operation of law" a self-determination contract proposal to run an educational program, which was found to be unlawfully declined by the BIA. However, the court did not select a particular date, or mention whether the start date should relate back to a specific period of time.

In the instant case, the Tribe has not been operating the Clinic, nor has there been partial approval of portions of the contract such that the agency would have already been obligated to provide funding for CSC from October 1, 2005. <u>See</u>, Compl., ¶ 42 (stating that the Tribe's proposed contract was declined "in its entirety"). <u>Crownpoint</u> and <u>Pascua</u> are not similar enough to this case to convince the Court that a bright-line standard should be applied to the selection of a start date for the proposed contract. What is clear is that the sole purpose in imposing a start date of October 1, 2005 would be to preserve Plaintiff's ability to continue to allege damages which the Court considers largely speculative – a view with which Plaintiff's counsel does not entirely disagree.[4]

Defendants reject the notion that Plaintiff is entitled to any "damages" for a reversal of a declination under the ISDA, other than an award of the proposed contract. In <u>Samish Indian Nation v. U.S.</u>, the Federal Circuit found that the ISDA showed no congressional intent to allow the Samish Tribe to seek damages for CSC which were never incurred, on contracts never created, based on a wrongful refusal to accord federal recognition. 419 F.3d 1355, 1367 (Fed.Cir. 2005) ("Such a damage remedy, if available, would provide them nothing but a windfall").

I find that the Tribe would not be prejudiced nor punished for appealing (as Plaintiff

---

[4]  The parties have not conducted any discovery on the damages issue.

contends) if the contract were to become effective when the Tribe takes over the Clinic's

operation.  Plaintiff would still be awarded the same contract as if it had not been declined,

subject to a reconfiguring of the proposed numbers to conform to present day accounting – an

exercise which Defendants represent is handled by computer.  Defendants also represent that the

Tribe would be placed immediately on the waiting list (or "shortfall list"), and prioritized on the

basis of need, and not according to waiting time.[5]

Accordingly, the Court finds that the starting date for the proposed contract which has

been the subject of this lawsuit will be the date on which the Tribe begins the operation of the

Clinic.

## II. Contract Language

The parties also cannot agree on certain language as part of the contract.  Defendants'

version of the contract language would reflect that Defendants currently owe the Tribe $0 in

CSC (on the basis that the Tribe has not incurred any costs, and because no funds are available to

be dispersed); that the CSC amount reflecting Plaintiff's required CSC will be calculated; but in

view of the congressional earmark for CSC, the amount will be placed on the shortfall list for

payment if and when funding becomes available.  Plaintiff contends that this language is not

authorized by the model agreement language which is set out in the ISDA, and that it contradicts

this Court's mandate in its June 15, 2007 Memorandum, Opinion and Order.  Neither argument

has merit.

Based upon my review of the statute, including the model agreement language included

at 25 U.S.C. § 450l(c), I find that the language which Defendants propose is additional language

which is envisioned by, and inherently complies with, the model agreement language in the

---

[5] Defendants will be held to adhere to this representation.

ISDA.   The model agreement requires that:

> The *annual funding agreement* under this Contract shall only contain. . . *terms* that identify the programs, services, functions, and activities to be performed or administered, the general budget category assigned, the funds to be provided, and the *time and method of payment*.

25 USC § 450l(c) (model agreement § (f)(2)(A)(i)(emphasis added).  The annual funding agreement is "incorporated in its entirety" and must be attached to the proposed self-determination  contract. 25 USC § 450l(c) (model agreement § (f)(2)(B)).  The model agreement also states:

> *Subject to the availability of appropriations*, the Secretary shall make available to the Contractor the total amount specified in the *annual funding agreement* incorporated by reference in subsection (f)(2).  Such amount shall not be less than the applicable amount determined pursuant to [25 U.S.C. § 450j-1][6] (emphasis added).

25 U.S.C. § 450l(c) (model agreement § (b)(4)).

It is apparent that the annual funding agreement is part of the framework of the model agreement.  Thus, language which is inserted into the contract as part of the "terms" describing the "time and method of payment" cannot be characterized as additional language which contradicts the model agreement.  I agree with Defendants that the Government cannot enter into a self-determination contract listing only the amount it must pay, under §§450j-1(a)(1) and (a)(2).  The agency must also describe *how* that amount will be paid, under the express requirements of the ISDA and the model agreement.

Plaintiff's version of the proposed contract refers to the annual funding agreement, but merely tracks the generic language of the model agreement, containing no specific terms for "time and method of payment."  Doc. 51, Mot. to Set Presentment Hrg. for Writ of Mandamus Ex. 3 (Self-Determination Contract) at 9, Article VI.  Plaintiff's version also allows for a method

---

[6] Sections 450j-1(a)(1) and (a)(2) describe, respectively, the amount of funds which should be provided for the operational expenses and contract support costs.

of quarterly payment "[i]f quarterly payments are specified in the annual funding agreement. . .
." Ex. 3, Section 6 ("Payment").  Thus, Plaintiff's own draft of the proposed contract envisions
the need for specific terms for time and method of payment to be included within the annual
funding agreement.  Ironically, while the Tribe argues that language regarding time and method
of payment is not part of model agreement language, it simultaneously attempts to dictate its
own terms for payment of a nebulous amount of money which it alleges it is owed.  Plaintiff's
draft of the Writ of Mandamus states:

> By no later than 60 days after entry of this Writ, the defendants are directed to pay the
> Southern Ute Indian Tribe any amounts due for FY 2006, FY 2007 and FY 2008 and to
> transfer operation of the Southern Ute Health Clinic to the Tribe. . . .

Doc. 51, Ex. 1, ¶ 5 (Writ of Mandamus).

The Tribe recognizes that the agency cannot breach a contract where Congress has not
appropriated sufficient funds to cover the terms of the contract.[7]  Plaintiff has previously stated:

> [n]othing in the ISDA and nothing discussed during the negotiations between Plaintiff
> and Defendants would require Defendants to pay funds that have not been appropriated . .
> . the lack of sufficient appropriations from Congress would only support a refusal of the
> agency to pay CSC under the terms of an existing contract.

Doc. 25 (Pltff's Resp. to Mot. for Sum.J.), at 6.  Thus, there is common sense to Defendants'
position that, if Plaintiff acknowledges that IHS' contractual obligation to pay contract support
costs is unenforceable (based on the model agreement's "subject to the availability of
appropriations" language), then Plaintiff's refusal to waive immediate payment of CSC is
illogical.  See, Doc. 29 at 5 (Defts' Reply in Supp. of Mot. for Sum.J.).

Plaintiff should have no objection to the inclusion of terms in the annual funding

---

[7]  The United States Supreme Court's decision in Cherokee Nation of Okla v. Leavitt,
543 U.S. 631 (2005) suggests, as this Court has noted, that "the Government's obligation to pay
CSC may be different when there are no unrestricted funds available to pay them."  Doc. 50
(Mem.Op. & Order).

agreement which reflect the practical ramifications of the current statutory cap on available appropriations.  On the other hand, if such language is omitted, it is abundantly clear that the Government will be forced to enter a contract which it must breach up front, but which it will ultimately be allowed to breach.  Ruling in favor of Plaintiff on this issue is not only contrary to ISDA provisions, it would prove to be an exercise in futility by opening the door to unwinnable – and perhaps frivolous –  breach of contract claims.

Defendants' version of the terms for the annual funding agreement is not prohibited under the ISDA.  Plaintiff would not be waiving any of the funding provided under 25 USC § 450j-1(a)(1) and (a)(2) for operating expenses and CSC, but only waiving immediate payment of CSC.  Plaintiff would be paid $0 now, and would be placed on Defendants' "shortfall list," and CSC amounts would be paid if and when funds become available.

Inclusion of the language also does not contradict the Court's previous mandate to the agency.  In its June 15, 2007 decision, the Court stated that the IHS:

> . . . may not unilaterally amend the ISDEA by altering the declination criteria in the ISDEA, eliminating an element of the funding scheme for Self-Determination contracts, or developing new contract language that contradicts the statutory model language developed by Congress.

Doc. 50 (Mem.Op. & Order, at 17).    The Court also concluded that:

> Defendants did not have discretion to decline Plaintiff's proposal on the basis of insufficient Congressional appropriations to pay CSC and did not have discretion to condition approval of Plaintiff's proposal on new contract language contradicting statutory model language or on Plaintiff's waiver of funding specifically provided under the ISDEA.

Mem.Op.& Order, at 19.   Those findings concerned ISDA language only as it related to *declination* of the proposed contract.   Further, I have determined that the "additional language" Defendants wish to add does not contradict the model agreement language in the ISDA.

This Court has already ruled in favor of Plaintiff in that the agency is required to enter

into a self-determination contract with the Tribe.  However, the Tribe is not entitled to full and immediate payment of all costs and expenses, as a matter of law.  The language Defendants wish to include within the annual funding agreement is consistent with the statutory requirements of the ISDA or the model agreement language.

## CONCLUSION

I find in favor of Defendants on both issues raised in the pleadings.  Neither the ISDA nor the case law cited by Plaintiff requires a start of date for the self-determination contract Plaintiff of October 1, 2005.  The Tribe will not be prejudiced by an effective date for the contract as the date the Tribe begins to operate the Clinic, because the Tribe will be placed immediately on the agency's shortfall list.

I also conclude that the annual funding agreement requires the addition of language describing the terms for time and method of payment.  Therefore, the language which Defendants seek to insert into the annual funding agreement does not contradict the ISDA or the model agreement language, nor is it inconsistent with this Court's previous rulings.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Set Presentment Hearing for Writ of Mandamus **(Doc. 51)** is hereby DENIED for reasons described above;

**IT IS FURTHER ORDERED** that Defendants' Motion for Clarification **(Doc. 58)** is hereby GRANTED for reasons described above;

**IT IS FURTHER ORDERED** that the following shall occur regarding the self-determination contract at issue:

(1)      parties shall meet and resume negotiations for entering into a self-determination contact which includes a start date of the date the Tribe undertakes operation of the Southern Ute Health Clinic;

(2)     the contract will include Defendants' version of the annual funding agreement language which is described within this Memorandum Opinion;

(3)     the Southern Ute Indian Tribe will be placed immediately on Defendants' shortfall list, which Defendants have represented it will do, and which Defendants represent allows payment on the basis of need;

(4)     within six **(6)** weeks of the date this Memorandum, Opinion and Order is entered, parties shall complete negotiations and submit a form of order for injunctive relief to the Court, through the email address indicated on the Court's web page for proposed orders.  The proposed order must be submitted in WordPerfect or Rich Text format.  Parties are directed to advise the Court upon either party's failure to comply with the above requirements;

**IT IS FINALLY ORDERED** that, within the six week period allowed for renegotiating the self-determination contract, parties shall advise the Court regarding the status of Plaintiff's Third Count in the Complaint, alleging a violation of the Administrative Procedures Act.[8]

_____
UNITED STATES DISTRICT JUDGE

---

[8] At oral argument, Defendants represented that Plaintiff's Third Count has become moot, but there is nothing of record to substantiate this.