IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

SOUTHERN UTE INDIAN TRIBE,

    Plaintiff,

v.                                                                                          Civ. No. 05-988 WPJ/LAM

KATHLEEN SEBELIUS, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING REQUEST FOR ATTORNEY FEES**
**and**
**DENYING REQUEST FOR FURTHER DISCOVERY**

THIS MATTER comes before the Court sua sponte, following the decision on appeal of this case to the Tenth Circuit Court of Appeals. *See Southern Ute Indian Tribe v. Sebelius,* 657 F.3d 1071 (10th Cir. 2011). This case involves a contract pursuant to the Indian Self–Determination and Education Assistance Act (25 U.S.C. § 450f), between the Federal government and Plaintiff ("the Tribe"). Under this contract, the Tribe is to assume control over and management of the programs, functions, services and activities of the Southern Ute Health Center, pursuant to the Indian Self–Determination and Education Assistance Act ("ISDA") (25 U.S.C. § 450f).

The Court herein issues a final determination of the issues which remain in this case. A brief synopsis of the procedural history of this case is necessary before addressing other issues.

**I.     History of the Case**

Congress enacted the ISDA in recognition of "the Federal government's historical and

special legal relationship with, and resulting responsibilities to, American Indian people . . . ." 25 U.S.C. § 450.  Within this statutory scheme of the ISDA, Congress set forth a method for Indian Tribes to assume control over certain federally provided programs.  Relevant to the instant case, the ISDA directs the Secretary of the United States Department of Health and Human Services ("HHS" or "agency" for these purposes), upon request of an Indian tribe, to enter into a contract by which the Tribe assumes direct operation of an HHS federal Indian Health care program.  25 U.S.C. § 450f(a)(1).

The underlying issue relevant to the Tribe's complaint was a purely legal one.  The question was whether the Defendants had discretion under the ISDA to decline to enter into a contract with the Plaintiff Tribe to assume control over and management of the programs, functions services and activities of the Southern Ute Health Center.  The Court ruled in favor of the Tribe that HHS was required to enter into a self-determination contract with the Tribe:

> Defendants did not have discretion to decline Plaintiff's proposal on the basis of insufficient Congressional appropriations to pay CSC and did not have discretion to condition approval of Plaintiff's proposal on new contract language contradicting statutory model language or on Plaintiff's waiver of funding specifically provided under the ISDA.

Doc. 50 at 19 (Mem. Op. & Order).  However, the parties' disputes did not end there.  They were unable to agree as to the starting date of the contract, the amount of contract support costs ("CSC") required to be paid under the contract, or the terminology concerning payment of contract support costs.  Also, Defendants requested clarification as to the amount and terms of payment, which they contended were inseparable from the issue of whether Defendants were required to enter into a contract.

The Court subsequently found that the Tribe was not entitled to full and immediate payment of all costs and expenses.  The Court concluded that the language Defendants wished to

include within the annual funding agreement was consistent with the statutory requirements of the ISDA and the model agreement language.  Doc. 66 (Mem. Op. & Order at 10.   The Tribe appealed the rulings.  The Tenth Circuit Court of Appeals affirmed the ruling that HHS was required to enter into a contract with the Tribe, as well as the ruling that the start date of the contract was October 1, 2009, the date on which the Tribe began operating the clinic pursuant to the executed contract.  However, the Tenth Circuit reversed the Court's ruling that allowed the agency to insert language into the contract waiving immediate payment of the CSC based on the agency's lack of funds to pay them.[1]

Following the Tenth Circuit's decision, the Court ordered the parties to present the Court with a formal joint submission regarding what issues remained after the appeal.   This joint submission indicated that the parties took different positions about two issues in particular.  Doc. 105.   The first issue concerns deletion of the offending CSC language in the contract.  Doc. 109.  The Court agreed with the Government that no further action by the Court was necessary because the decision of the Tenth Circuit is automatically controlling, and because HHS had already agreed to comply with the  Tenth Circuit directive and delete the language from the contract.   Thus, this issue is moot because it has been resolved.

The second issue, Plaintiff's request for attorney's fees, remains unsettled.   In response to the Court's Order, the parties have briefed the issue.  Docs. 110 & 111.

## II.     Whether the Tribe is Entitled to Attorney's Fees and Further Discovery

The complaint requested a fee award under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), which states in relevant part:

---

[1] That language stated that the Tribe was entitled to "$0" and was required to "waive immediate payment of CSC" on the grounds that HHS lacked funds to pay them.  The Tenth Circuit held that such language was inconsistent with the ISDA's model agreement.  However, the Tenth Circuit also noted that the revised contract language was subject to the "caveat" that "the provision of funds . . . is subject to the availability of appropriations."  657 F.3d at 1083 (citing 25 U.S.C. § 450j-1(b)).

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs . . . in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.[2]

Defendants offer several grounds for denying the Tribe's request for fees, all of which the Court finds have merit. While denial on one of these grounds would be sufficient to resolve the issue of attorney's fees, the Court prefers to leave no stone unturned (or no argument unaddressed) in this case, which has been before the Court long enough to ensure a finality on all remaining issues.

A.   <u>Timeliness</u>

EAJA requires that a party submit to the Court an application for fees and other expenses "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). Such a final judgment was issued in this case on June 25, 2012, when the Supreme Court denied Defendants' petition for writ of certiorari. *Sebelius v. S. Ute Indian Tribe*, 133 S.Ct. 24 (2012) (Doc. 102). The Tribe had thirty days from June 25, 2012 to submit a fee petition under EAJA, but none was filed. Plaintiff's request for EAJA fees in the complaint is not sufficient to comply with the statute's express requirement that the fee petition be filed "within thirty days of final judgment in the action." This means that Plaintiff's request for EAJA fees in the complaint is not sufficient to comply with the statute's requirement. Plaintiff does not respond to this argument, or otherwise explain why its failure to timely file an EAJA petition does not defeat any claim for fees. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 98, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."); *see also Arulampalam v. Gonzales*, 399 F.3d 1087, 1089-90 (9th

---

[2] EAJA allows recovery of fees on other bases, which are not relevant here, nor is the Tribe seeking recovery of fees under those provisions.

Cir. 2005) ("narrowly constru[ing]" the thirty-day limitation period for submitting fee applications in § 2412(d)(1)(B)). Thus, Plaintiff's request for fees is denied because the request for fees was not timely made.

B.      Financial Eligibility

Defendants contend that the Tribe is financially ineligible to request fees under EAJA. A party seeking attorney fees and expenses under § 2412(d) must submit an application that "shows that the party is . . . eligible to receive an award under [the] subsection." 28 U.S.C. §2412(d)(1)(B). "Party" is defined in relevant part as "any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed . . . ." 28 U.S.C. §2412(d)(2)(B). Therefore, in order to be eligible for fees under 28 U.S.C. §2412(d), Plaintiff is required to show that its net worth did not exceed $7 million at the time it filed this case in 2005.

Defendants contend that the Tribe's net worth and assets appear to be valued at billions of dollars, and are likely to have been in that same range in 2005, when this case was first filed. Plaintiff does not dispute that it is financially ineligible under EAJA's provisions.[3] Instead, it argues that EAJA is ambiguous in that it is inconsistent with the Congressional purpose behind enacting the ISDA. In particular, the Tribe points out that the 1987 amendments to the ISDA were "intended to remove many of the administrative and practical barriers" that persisted under the ISDA "in achieving Congress' objective of "the maximum participation by Indian Tribes in the planning and administration of federal services, programs and activities for Indian communities." *See* Sen.Rpt. 100-274 (Dec. 21, 1987) (reprinted in 1988 U.S.C.C.A.N. 2620) at 1.

---

[3]  Defendants offer several links to Internet pages supporting their claim that the Tribe's holdings has grown to more than $3 billion. *See* Doc. 111 at 3-4.

EAJA is available to Tribes bringing civil actions against the Federal government; it is just not available to Tribes that are worth over $7 million at the time the lawsuit is filed.[4]  The Court does not find that the EAJA financial eligibility provision is at odds with the congressional objectives behind either the ISDA or EAJA.  The purpose of EAJA is to ensure that persons with limited financial resources are not "deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights."  *Scarborough v. Principi,* 541 U.S. 401, 407 (2004) (quoting H.R. Rep. No. 99-120, at 4 (1985)); *see also Owner-Operator Independent Drivers Ass'n v. Federal Motor Carrier Safety Administration*, 675 F.3d 1036, 1040 (7th Cir. 2012) ("The intent of the EAJA is to assist individuals or small entities, not to subsidize large entities that are better able to afford legal services") (citing *Unification Church v. INS*, 762 F.2d 1077, 1081 (D.C. Cir. 1985)).

If the agency's position is not substantially justified, a tribe whose net worth is over $7 million would not be unduly burdened to pay its own legal fees; whereas a tribe that has a net worth of less than that amount would be reimbursed for its fees and related costs.  This is entirely consistent with EAJA's purpose in aiding persons with *limited financial resources,* which clearly would not apply to a party whose net worth is over $7 million.  Where the agency's position is substantially justified, a plaintiff would not be entitled to fees regardless of its net worth, since fee recovery in such a case could be viewed as a windfall obtained at the Federal government's expense and would be incompatible with EAJA's purpose.  *See Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) (EAJA's waiver of sovereign immunity "must be strictly construed in favor of the United States.").

---

[4]  Plaintiff notes that the addition in the 1987 amendments of §450m-1(c) applied EAJA to appeals from administrative decisions in order to remedy the inability of tribal contractors to recover legal fees under EAJA.  The Court fails to see how this provision supports any of the Tribe's arguments.   First, this lawsuit is not an administration appeal; and second, §450m-1(c) does not modify EAJA's financial eligibility requirements for administrative appeals.

Nor is EAJA's financial eligibility provision ambiguous or inconsistent with the ISDA's objectives.  The ISDA's objective is to maximize the Tribes' ability to participate in the planning and administration of federal services, programs and activities.  This objective is not attenuated because a party whose net worth is over $7 million is precluded from requesting a fee award.

Plaintiff requests discovery as to the net worth of other Tribes for purposes of arguing that the financial eligibility requirements of EAJA should not apply to a claim by Tribes for fees under the ISDA because no Tribe can meet them.  The Court denies this request for several reasons.  First, Defendants offer examples of cases where Tribes have met EAJA's financial threshold and were awarded fees and thus, discovery would be pointless.[5] Second, Defendants do not have first-hand information about the net worth of all Tribes, so discovery would have very limited value.  Last, and most important, the net worth of other Tribes is irrelevant; the question is whether Plaintiff in this case is financially eligible.

The Tribe also suggests that the common benefit exception to the American Rule may apply here, as "one of the policy underpinnings for compensating prevailing parties under [EAJA]."  Doc. 110 at 2, n.1.  Plaintiff explains that precedent established in this case will confer a benefit on other Tribes seeking CSC costs under the ISDA.   However, the Court does not see how the common benefit exception applies here.  First, the "precedent" Plaintiff seeks to establish has no merit; second, Plaintiff has no standing to assert the rights of other Tribes that might some day in the future apply for EAJA fees; and third, the common fund exception is used in cases involving compensation in class action cases.  *Cmp. Ramah Navajo Chapter v. Babbitt,*

---

[5] *See St. Regis Mohawk Tribe v. Area Director*, Final Decision on Review of Admin. Law Judge Decision No. 1859, 2002.12.04 DAB 1859 (Dep't of Health and Human Servs. Dec. 4, 2002), http://www.hhs.gov/dab/decisions/dab1859.html; *Susanville Indian Rancheria*, Decision No.  1846, 2002.09.19 DAB 1846 (Dep't of Health and Human Servs. Sept. 19, 2002), http://www.hhs.gov/dab/decisions/dab1846.html.

50 F.Supp.2d 1091 (D.N.M. 1999).

Accordingly, Plaintiff is not entitled to fees under EAJA because the Tribe does not meet the statute's financial eligibility requirement.

C. <u>Merits of EAJA Request</u>

The Court agrees with Defendants that even if Plaintiff could meet EAJA's financial eligibility requirements, the request for fees would be denied because the agency's position in this case was substantially justified. To be "substantially justified," it is not necessary for the government's position to be "justified to a high degree"; rather, the government meets this standard if its position is "justified in substance or in the main." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted).

Plaintiff contends that the agency's position was not justified because the agency wanted to decline entering into a contract even though Defendant had no information at that time concerning what the funding would be for the fiscal year that affected the contract (FY 2006). While this may be true, it is not the whole story. The agency refused to enter into a contract which contained a promise for immediate payment of costs for which funding had not yet been established; as Plaintiff notes, there was no information yet on funding for FY 2006.

It is not a stretch to consider this issue novel, and therefore substantially justified. The Tenth Circuit acknowledged that it was considering an issue not addressed before:

> Such litigation has led to decisions by the Supreme Court and this court about the Secretary's obligation to pay CSCs to tribes under existing contracts in the face of chronic shortfalls in CSC funding. *See Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 125 S.Ct. 1172, 161 L.Ed.2d 66 (2005); *Ramah Navajo Chapter*, 644 F.3d 1054. This appeal, by contrast, requires us to consider the Secretary's obligations in deciding whether and how to enter into new contracts.

*S. Ute Indian Tribe v. Sebelius,* 657 F.3d at 1075. Additionally, Defendants' petition for a writ

8

of certiorari to the United States Supreme Court was pending at the time the Supreme Court published a decision on this very issue involving an ISDA contract.  In *Salazar v. Ramah Navajo Chapter,* 132 S.Ct. 2181 (2012), the Supreme Court observed that that "Congress obligated the Secretary to accept every qualifying ISDEAA contract, which includes a promise of 'full' funding for all contract support costs," even though "Congress appropriated insufficient funds to pay in full each tribal contractor."  *Id*. at 2195.   One week after deciding *Ramah,* the Supreme Court denied Defendants' petition for writ of certiorari.

This Court's own decision acknowledged the uncertainty on this particular question, citing to *Cherokee Nation*, where the Supreme Court did not address what the agency's obligations to pay CSC would be if Congress did not appropriate adequate unrestricted funds. Doc. 50 at 18.   Moreover, *Cherokee Nation* involved existing contracts and did not discuss the agency's obligation to enter into *new* contracts, as the case is here.[6]

The Tribe makes much of the fact that this case has been litigated for seven years, intimating that this protracted length of time is due to the agency's use of "irrelevant evidence to defend" its actions.  Doc. 110 at 2.    Given the unsettled nature of the law in this area, Defendants were entitled to vigorously defend their position on the issues, as zealously as Plaintiff defended its position on all the issues raised in this case.   It was this robust representation on both sides which caused the long litigation of this case.   The Court notes that Plaintiff advocated its position regarding the start date for the contract as zealously as Defendants stood their position on the other issues.   The Tribe challenged the ruling concerning

---

[6]  In *Cherokee Nation,* the Supreme Court stated that the agency should ask Congress for additional funding, or to protect funds "needed for more essential purposes with statutory earmarks."  543 U.S. at 642.  The decision also suggested that the contractor would be "free to pursue appropriate legal remedies arising because the Government broke its contractual promise."  *Id.*  In the instant case, the issue was whether the agency could avoid setting itself up for breach of promise by declining to enter into *new* contracts promising immediate payment of CSC for which there was no certain appropriation, which was a different question from what the Supreme Court had decided in *Cherokee Nation*.

the contract date appeal, and was unsuccessful.  657 F.3d at 1084.

Accordingly, the Court finds that Defendants' position was justified in substance. Therefore, Plaintiff is not entitled to EAJA fees.  *See Saysana v. Gillen,* 614 F.3d 1, 5 (1st Cir. 2010).

## CONCLUSION

In sum, I find and conclude that the issue regarding the waiver language in the ISDA is MOOT, based on Defendants' representation that appropriate language has already been inserted into the October 1, 2009 ISDA contract at issue.

I further find and conclude that Plaintiff is not entitled to fees under EAJA because the fee petition is untimely; because the Tribe is not financially eligible under EAJA's provisions; and because, even assuming the previous two findings do not apply, the agency's position was substantially justified.

Plaintiff's request for discovery is denied because it is pointless and also because it is irrelevant to Plaintiff's request for fees.

Based on the parties' representations in the joint status report recently filed with the Court (Doc. 108), the Court's resolution of the above issues disposes of this case entirely and on its merits.

**THEREFORE,**

**IT IS ORDERED** that no further modification is necessary regarding the language for the ISDA contract at issue in light of the Tenth Circuit Court of Appeals' decision in *Southern Ute Indian Tribe v. Sebelius,* 657 F.3d 1071 (10th Cir. 2011);

**IT IS FURTHER ORDERED** that Plaintiff is not entitled to fees under EAJA for reasons described in this Memorandum Opinion and Order;

**FINALLY, IT IS ORDERED** that Plaintiff's request for discovery is denied for reasons described in this Memorandum Opinion and Order.

A separate Judgment shall issue.

_____
UNITED STATES DISTRICT JUDGE